**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| ROBERT ELLIOTT, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>GENERAL MOTORS LLC,<br><br>    Defendant. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert Elliott, by and through his attorneys, on behalf of himself and all others similarly situated, alleges the following based upon information and belief, the investigation of counsel, and personal knowledge as to the factual allegations pertaining to themselves.

### INTRODUCTION

1.      Defendant General Motors LLC ("GM" or "Defendant") designed, manufactured, marketed, distributed, sold, warranted, and serviced thousands of 2016 Cadillac SRX vehicles ("Cadillac SRX" or the "Vehicles").

2.      Each of the Vehicles  contain a defect in which the Vehicles' low beam headlights experience damage to the assembly components, resulting in diminished light output or catastrophic failure (hereinafter, the "Headlight Defect" or "Defect").

3.      As a result of the Headlight Defect, Plaintiff and Class Members are unable to operate their Vehicles safely before dawn, after dusk, or in inclement weather because of the decrease in drivers' visibility. Plaintiff and Class Members have resorted to using their high beams as their main source of light when driving at night, blinding drivers in front of them, raising the risk of accidents, or not operating their Vehicles at all.

4.      The Defect is a significant safety concern, and, though numerous consumers have specifically complained about it, GM has failed to adequately address the Defect. GM had knowledge of the Headlight Defect, issuing the first in a series of technical service bulletins ("TSBs") on February 8, 2016.

5.      In fact, GM has known of this defect since at least May 2010 because the same defect affected the low beam headlamps in the 2010-2015 SRX models and, as a result, GM released multiple TSBs to its dealers identifying the defect.

6.      Plaintiff has given GM reasonable opportunities to honor its contractual obligations and cure the Headlight Defect, but GM has refused to and/or is unable to do so within a reasonable period of time.

7.      Defendant's conduct is a breach of its implied warranties, and in breach of the Magnuson-Moss Warranty Act, 15 U.S.C. section 2301, *et seq.*, fraud, and unjust enrichment on behalf of the proposed Nationwide Class and, in the alternative, the proposed Virginia Sub-Class.

8.      GM has and will continue to benefit from its unlawful conduct—by selling and leasing more Vehicles, while consumers are harmed at the point of sale because their vehicles suffer from the Headlight Defect. Had Plaintiff and other proposed Class Members known that the defect existed at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

9.      To remedy GM's unlawful conduct, Plaintiff, on behalf of the proposed class, seek damages and restitution from GM, as well as notification to all Class Members about the defect with the vehicles' headlights.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. section 1332(d)(2)(A) and (6) because the claims relating to the matter in controversy exceed $5 million, exclusive of

interest and costs, the proposed classes have at least 100 members, and this is a class action in which certain of the Class Members (including Plaintiff) and Defendant are citizens of different states.

11.     Venue is proper in this judicial District under 28 U.S.C. section 1391 because Defendant General Motors LLC is a resident of this judicial District and is registered to do business and does do business throughout this District, and a substantial part of the acts and omissions giving rise to Plaintiff' claims occurred in, or emanated from, this District.

12.     At all pertinent times, GM was engaged in the marketing, advertisement, sale and lease of the Vehicles, which are the subject of this lawsuit, in this District and throughout the United States.

## PARTIES

13.     Plaintiff Robert Elliott is, and at all times mentioned herein was, an adult individual residing in Claremont, Virginia. Robert Elliott is a citizen of Virginia.

14.     Defendant General Motors LLC is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan. The sole member and owner of General Motors LLC is General Motors Holdings LLC. General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in the State of Michigan. General Motors Holdings LLC's only member is General Motors Company, a Delaware corporation with its principal place of business in the State of Michigan. Thus, Defendant General Motors LLC is a citizen of both Delaware and Michigan.

15.     At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, selling, and leasing automobiles and motor vehicle components, including the Class Members' Vehicles, throughout the United States.

## SUBSTANTIVE ALLEGATIONS

16.     This is an action brought against Defendant on behalf of Plaintiff and all persons who purchased or leased a model year 2016 Cadillac SRX.

17.     The Cadillac Motor Car Division is a division of GM that designs and builds luxury vehicles. The Cadillac brand was bought by GM in 1909 when Cadillac had already established itself as one of America's premier luxury car makers, and has since consistently been marketed as producing luxury, high-performance vehicles.

18.     Cadillac claims it has been a leading luxury auto brand since 1902, and has engineered a historic renaissance led by artful engineering and advanced technology.[1]

19.     GM sells Cadillac vehicles to its authorized distributors and dealerships, which in turn sell those vehicles to consumers. After these dealerships sell cars to consumers, including Plaintiff and members of the Classes, they purchase additional inventory from GM to replace the vehicles sold, increasing GM's revenues.  Thus, Plaintiff's and Class Members' purchase of the Vehicles accrues to the benefit of GM by increasing its revenues.

20.     Defendant introduced the first-generation Cadillac SRX in 2003 as a compact luxury crossover SUV ("CUV") as a five-door, three-row, seven passenger CUV (2003–2009). In 2010, Defendant launched the second-generation Cadillac SRX as a five-door, two-row, five-passenger CUV. 2016 was the last model year in Defendant's production of the Cadillac SRX. GM did not make any major changes to the 2016 SRX, which remained substantially the same from the 2015 model[2]. However, the 2016 models were offered with optional adaptive High-Intensity Discharge (HID) headlights.[3] Cadillac touted its "light pipe technology" in the iconic vertical

---

[1]https://media.cadillac.com/content/media/us/en/cadillac/vehicles/srx/2016/_jcr_content/iconrow/textfile/file.res/15-PG-Cadillac-SRX.pdf (last accessed September 20, 2021).

[2] https://cars.usnews.com/cars-trucks/cadillac/srx (last accessed September 20, 2021).
[3] https://www.consumerreports.org/cars/cadillac/srx/ (last accessed September 20, 2021).

headlamps, and its updated "HID headlamps with adaptive forward lighting technology that turns the lamps in the direction of the front wheels."[4]

21.     Upon information and belief, the seals GM uses in the Vehicles headlights' exterior housing units wear out prematurely, thereby allowing moisture to accumulate and condense. The moisture damages the assemblies' internal components, and causes the headlights to malfunction and/or fail because it corrodes the lamp assembly components and/or because it causes electrical shorts.

22.     Upon further information and belief, it is alleged that the vents that allow air flow to maintain pressure and prevent the lenses from cracking increase the tendency for water to accumulate and condense in the housing units. These defects result in damage to assembly components, such as corroding igniters and burnt-out bulbs, resulting in the Headlight Defect.

23.     The Vehicles are unreasonably dangerous to consumers because the Headlight Defect prevents their safe operation. For example, as the Headlight Defect progresses, the excessive accumulation of water or condensation can damage crucial components—like the igniter and the bulb—resulting in diminished light output or catastrophic failure.

24.     Malfunctioning or inoperative headlights impair drivers' ability to operate the vehicles safely because they decrease drivers' visibility and make the Vehicles themselves more difficult for other drivers or pedestrians to see.

25.     Class Members have also resorted to using their high beams as their main source of light when driving at night, blinding drivers in front of them or in the opposite direction. In short, the dim light output resulting from the Headlight Defect raises the risk of accidents, particularly after dusk, before dawn, or in inclement weather.

---

[4]https://media.cadillac.com/content/media/us/en/cadillac/vehicles/srx/2016/_jcr_content/iconrow/textfile/file.res/15-PG-Cadillac-SRX.pdf (last accessed September 20, 2021).

26. Inoperative headlights also make the Vehicles more difficult for other drivers or pedestrians to see causing safety issues for not just the driver but the general public.

27. Indeed, Class Members have already experienced accidents or near accidents as a result of the Headlight Defect. In addition, numerous Class Members have been pulled over by police as a result of the headlights being so dim that police could not tell that the lights were on.

28. Plaintiff and Class Members have had to change their driving habits, including avoiding driving at night or in inclement weather, and have had to expend substantial money and time attempting to repair the Headlight Defect. Moreover, had Plaintiff and the putative Class Members known of the Headlight Defect, they would not have purchased or leased those vehicles, or would have paid substantially less for them. Moreover, because of the Headlight Defect, the Class Members' vehicles have a lower market value, and are inherently worth less than they would be.

29. Since 2010, GM has designed, manufactured, distributed, sold, and leased the Vehicles equipped with the Headlight Defect nationwide directly or indirectly through dealers and other retail outlets to thousands of Class Members. Despite adding new lighting features to the 2016 SRX, GM failed to address the original defect found in previous model years, and the Headlight Defect persists in the Vehicles. In Defendant's release of the Vehicles' product information, Defendant claims that the "[2016] Cadillac SRX provides a standard NHTSA 5-Star overall crash safety rating, the highest safety rating available."[5]

30. In addition, Cadillac provides available advanced safety features to help prevent crashes that "bolster driver vision and awareness of road hazards, and can even assist to help the

---

[5] https://media.cadillac.com/content/media/us/en/cadillac/vehicles/srx/2016/_jcr_content/iconrow/textfile/file.res/15-PG-Cadillac-SRX.pdf (last accessed September 24, 2021).

driver avert potential crashes."[6] Thus, purchasers and lessees of the 2016 Cadillac SRX believe that the Vehicles are not only safe, but that they contain additional, high-tech safety features, and that the safety of drivers and others on the road is paramount to Defendant.

31.     There is no mention in any of the advertising for the Vehicles that the Vehicles can experience dangerous headlight failures.  There are only promises of superior performance and safety, without revealing the whole truth about the safety of the vehicle.

32.     Purchasers of the Vehicles have complained to the National Highway Traffic Safety Administration ("NHTSA") of accidents or near accidents as a result of the Headlight Defect. Dozens more have complained to the NHTSA and in online forums of the challenges of driving with dim or no light output and their fears of an accident.

33.     By way of just one example, an owner of a 2016 SRX complained to the NHTSA on May 18, 2021, that the Headlight Defect made the vehicle "hardly useable at all at night" and the owner has resorted to using a different vehicle when driving at night because "it's almost like you don't have any headlights at night time."[7] This SRX owner had even replaced the headlights once previously, but the Headlight Defect remained.[8]

34.     Defendant has superior and exclusive knowledge of the Headlight Defect and knew or should have known that the Headlight Defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Vehicles.

35.     Defendant failed to warn purchasers and lessees about the possibility of the Vehicles' diminished light output and has failed to instruct purchasers and lessees as to how they

---

[6] *Id.*

[7] All NHTSA complaints submitted by consumers regarding the model year 2016 Cadillac SRX are accessible at:
https://www.nhtsa.gov/vehicle/2016/CADILLAC/SRX/SUV/AWD#complaints (last visited September 24, 2021).

[8] *Id.*

should respond when their Vehicles lose headlight capabilities.  Defendant did not include any such warnings or instructions in its Cadillac SRX Owner's Manual or any of its other representations about the Vehicles. In fact, Defendant has made no efforts to make purchasers and lessees aware of any headlight defects in the Vehicles.

36.     Defendant manufactured the Vehicles, as well as the electrical systems and the lamp assemblies which controls these systems within the Vehicles.

37.     Plaintiff and the other Class Members are informed and believe GM was aware of the Headlight Defect through sources in its exclusive custody and control and thus not available to consumers, including pre-production design failure mode and analysis data, production design failure mode and analysis data, and pre-release testing data. GM also was provided notice by early consumer complaints to GM and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, and other aggregate data from GM dealers about the problem. Publicly-available facts set forth *infra* further confirm GM's knowledge of the Headlight Defect.

38.     Additionally, GM should have learned of this widespread Headlight Defect from the sheer number of reports received from dealerships and from customer complaints directly to GM.

39.     Indeed, as of June, 2021, a number of Class Members had reported the Headlight Defect to various GM authorized dealerships.

40.     GM quietly issues notifications to its dealerships – but not consumers – via Technical Service Bulletins ("TSBs"). Through TSBs, GM provides directions to its authorized GM dealerships for how to respond to customer complaints and requests for repairs.  TSBs are only issued after GM has discovered an issue, investigated, and designed a repair, mitigation, or other response.  The issuance of a TSB thus reflects months, or even a year's, worth of knowledge

of a defect.

41.     GM issued several TSBs to dealers regarding the Headlight Defect. However, GM did not notify Plaintiff or Class Members of the Defect, warn future purchasers of the Defect, or change its vehicle advertising to reflect the Defect.

42.     Since May 2010, GM released several iterations of TSBs related to inoperative low beam headlamps in the 2010-2015 SRX models addressing the same issue to its dealers. In May 2010, GM issued the initial TSB, Bulletin No. 10-08-42-001, which applied to various vehicles, including the 2010 Cadillac SRX. The bulletin alerted service technicians that "[s]ome customers may comment that the low beam headlamp is inoperative." The recommended procedure included replacing the bulb and verifying any discoloration or damage to the connector that would require the replacement of that part too.

43.     The TSB was re-issued on or around January 24, 2011, as Bulletin No. 10-08-42-001A, to add vehicles, including the SRX model year 2011, and update the relevant part number. GM subsequently updated the bulletin at regular intervals, releasing Bulletin No. 10-08-42-001C in February 2012, Bulletin No. 10-08-42-001D in November 2014, and Bulletin No. 10- 08-42-001E in May 2015, which bulletin included the SRX model years 2010-2013. The TSB explained the repair procedure in far greater detail, which included replacing the wiring harness and inspecting the connector for discoloration at the bulb interface.

44.     GM never included the SRX Model Year 2016 within the Bulletin No. 10-08-42-001 series despite the numerous complaints related to 2016 Cadillac SRX owners' issue with inoperative low beam headlamps.

45.     Instead, GM later released TSBs regarding exterior lighting issues in the 2016 SRX models. On February 8, 2016, GM issued Bulletin No. 01-08-42-001K, related to "Exterior Lamp Condensation and Replacement Guidelines" which applied to various vehicles, including the 2016

Cadillac SRX. The bulletin alerted service technicians with information to "better define the causes of condensation in exterior lamps" by including guidelines to help identify the difference between a lamp with condensation issues and a lamp with a water leak. For those owners experiencing condensation conditions, GM stated that "the customer should be advised that replacement of a lamp assembly may not correct this condition." For those owners experiencing water leak issues, GM directs technicians to review Service Bulletin No 02-08-42-001 for information regarding impact damage and modification inspection.

46.    Bulletin No. 02-08-42-001H was released in April 2015, relating to headlamps and fog/driving lamp damage, amongst other lamp issues appliable to all SRX Model Year 2016 vehicles. Bulletin No. 02-08-42-001H was published to identify issues that are not considered warrantable by GM, including headlamps damaged by impact, chemicals, improper cleaning, overheating, or altered accessory modification. This bulletin was later updated on February 12, 2016, with Bulletin No. 02-08-42-001I to include 2017 Model Years of GM passenger cars and trucks and added additional graphics under non-warrantable conditions.

47.    The protocol in the TSBs is inadequate to resolve the Headlight Defect. Rather than redesigning the defective components and installing non-defective ones, GM purports to "repair" the Vehicles but instead it simply replaces the complained-of components with the very same defectively designed parts and components.

48.    Upon information and belief, no Class Member has received a repair from GM or any GM authorized dealer which permanently resolves the Headlight Defect.

49.    Thus, Vehicle owners incur costs in the amount of thousands of dollars for diagnosing, repairing, or replacing the headlights and their component parts. Indeed, the NHTSA is replete with complaints that the costs are well above $1,500, and sometimes as high as $4,000.

50.    Within the first year of the sale of the first 2016 SRX, GM received complaints

from consumers about the Defect and its associated safety risks on Cadillac specific forums such as cadillacsociety.com as well as through safety complaint reports made to NHTSA, as detailed further herein.

51.     Despite knowledge of the Headlight Defect and its dangerous associated safety risk, Defendant failed to issue a comprehensive and effective recall or fix the vehicles, and continued to sell Vehicles with the Headlight Defect.

52.     In fact, as a result of the consumer complaints that it was receiving as far back as 2010, GM issued a Customer Satisfaction Campaign ("CSC") that covered, *inter alia*, the 2010 Cadillac SRX and identified a condition caused by the loss of electrical contact between the halogen headlamp connectors and low beam head lamp bulbs that "could cause the headlamp and/or daytime running lamp to work intermittently." CSC No. 10043330-5822. The CSC offered to reimburse customers who had paid for this repair, however, as noted earlier, GM simply replaced the headlamps with the same defectively designed parts.

53.     Upon information and belief, a Cadillac SRX headlight defect class action lawsuit was settled in 2019 on an individual basis for owners and lessees of 2010-2015 SRXs for customers in California and Florida.

54.     GM issued a letter regarding "issues that could cause moisture to accumulate in [SRX] headlamp capsules." GM decided "in the interests of customers satisfaction" to reimburse 2011-2015 SRX owners "for any prior out-of-pocket SRX low-beam headlamp, headlamp capsule or headlamp bulb replacement costs for moisture-related issues" GM also offers reimbursement for the costs of diagnosis of a headlamp replacement "if you believe it is necessary." GM will reimburse "up to $1,600 per covered repair or replacement of one or both headlamps, including necessary parts and labor or covered parts purchased elsewhere."

55.     On information and belief, all Vehicles are equipped with the same or substantially

identical headlight assemblies as the 2011-2015 SRX model years, and the Headlight Defect is the same for all Vehicles.

56.     Class Vehicle owners incur out-of-pocket costs for these repairs because GM refuses to extend the warranty to cover them or issue a recall to prevent them. GM thus unfairly shifts the costs to the Class Members and benefits from the revenue generated by repeated repairs. Accordingly, consumers will be required to pay hundreds, if not thousands, of dollars to repair or replace the headlights and related components as a result of the Headlight Defect, and GM is unjustly enriched at their expense.

57.     After the CSC and class action settlement, GM did not remedy the Headlight Defect; and in fact, never notified the public or its consumers, including the Class Members, that it was selling the Vehicles with a defective headlight which was the same or substantially similar to the type that had been the subject of the CSC and class action settlement.

58.     Because GM has failed to notify Class Members of the Headlight Defect and has taken wholly inadequate steps to address the issue, Plaintiff and Class Members continue to use vehicles with a defect that creates dangerous and unexpected driving hazards. Driving with poor visibility due to such conditions presents danger to Plaintiff and putative Class Members, other drivers, and pedestrians by significantly increasing the risk of collisions. No consumer expects to purchase or lease a vehicle that may be non-operational before dawn, after dusk, or in inclement weather. The safety risk imposed by the Headlight Defect is objectively unreasonable.

59.     The Headlight Defect is inherent and was present in all of the Vehicles at the time of sale.

60.     GM knew about the Headlight Defect, along with its accompanying dangerous safety effects, and GM concealed its knowledge from Plaintiff and Class Members at the time of sale, lease, repair, and all times thereafter. In fact, instead of repairing the defects in the defective

headlights, GM either refused to acknowledge the existence of the Headlight Defect or performed replacement "repairs" that simply concealed its design defects.

61.     If Plaintiff had known about the Headlight Defect at the time of sale or lease, Plaintiff and Class Members would have paid less for the Vehicles of may not have purchased or leased them.

62.     As a result of their reliance on Defendant's omissions, owners and/or lessees of the Vehicles suffered an ascertainable loss of money, property, and/or value of their Vehicles, including expenses for headlight-related repairs. As a result of the Headlight Defect, Plaintiff and Class Members were harmed and suffered actual damages.

### Plaintiff's Experience With His Vehicle

#### Plaintiff Robert Elliott

63.     In the fall of 2017, Plaintiff Robert Elliott purchased a used 2016 Cadillac SRX (hereafter "Elliott Vehicle") with approximately 22,000 miles on the odometer from Suttle Motors ("Suttle Motors") in Newport News, Virginia, an authorized GM dealership.

64.     Plaintiff Elliott purchased the Elliott Vehicle primarily for personal, family, or household use.

65.     Plaintiff Elliott considers himself a "Cadillac man" and owns two other Cadillac model vehicles, neither of which have caused Plaintiff Elliott any major issues needing repair. Because Plaintiff Elliott had positive experiences with his other Cadillac vehicles, he trusted and anticipated that his purchase of the Elliott Vehicle would be comparable. The safety and reliability of the vehicle were important factors in Plaintiff Elliott's decision to purchase the Elliott Vehicle, particularly because he was purchasing the vehicle for his wife. Plaintiff Elliott test-drove the vehicle to ensure that the vehicle was fit for its intended purpose and that there were no apparent issues with the vehicle's safety, performance, and reliability.

66.     Despite Plaintiff Elliott's trust in the Cadillac vehicles, the Elliott Vehicle began experiencing the Headlight Defect on or about January, 2021 when the headlights began to dim, progressing to the point that Plaintiff Elliott was not able to see and drive safely in the evenings. Plaintiff Elliott lives in a rural area without many street lights and therefore requires the reliability of functioning headlights to drive at night. As a result, Plaintiff Elliott and his wife were forced to stop driving the Elliott Vehicle.

67.     Plaintiff Elliott took the Elliott Vehicle to Suttle Motors for an inspection of his headlights in June, 2021, where Suttle Motors informed Plaintiff Elliott that the headlight seals had eroded and the moisture caused damage to the reflectors inside the headlights, which led to the dim output of the low beam headlights. The Elliott Vehicle high beams were also affected by the moisture damage which likewise caused dim output from the high beams. Suttle Motors replaced the entire network of headlights, including the low and high beams, which cost Plaintiff Elliott $1,600 out of pocket. The dealership did not notify Plaintiff Elliott that the Headlight Defect was an ongoing problem with other Cadillac SRX models.

68.     Despite having the headlights replaced on the Elliott Vehicle, just two months later in August, 2021, Plaintiff Elliott began developing the Headlight Defect again, as one of the low beam headlights is experiencing diminished output. Plaintiff Elliott plans to return to Suttle Motors for another repair and/or replacement of the defective headlight.

69.     At all times, Plaintiff Elliott attempted to drive the Elliott Vehicle in a manner that was both foreseeable, and in which it was intended to be used.

70.     Plaintiff Elliott was never informed by GM, Suttle Motors, or by any other agent of GM, that the Elliott Vehicle suffered from the Headlight Defect. GM's omissions were material to Plaintiff Elliott. Had GM or its agents disclosed its knowledge of the Headlight Defect before Plaintiff Elliott purchased the Elliott Vehicle, Plaintiff Elliott would have seen and been aware of

the disclosures. Moreover, Plaintiff Elliott would not have purchased the Elliott Vehicle or would have paid less for it.

71.     Plaintiff Elliott continues to be presented with Defendant's misrepresentations about its Vehicles.  Plaintiff Elliott desires to purchase and use Vehicles that are safe and reliable for driving before dawn, after dusk, or in inclement weather.

72.     Given Defendant's misrepresentations and omissions, however, Plaintiff Elliott has no way to determine whether any of Defendant's representations about the performance and safety of the Vehicles, or any of its other vehicles, are, in fact, true.

## Class Members' Experience With the Vehicles

73.     Plaintiff's experience mirrors those of numerous other 2016 Cadillac SRX purchasers and lessees.  The internet contains numerous complaints from owners and lessees who, like Plaintiff, have experienced impairments with their Vehicles' headlights. The following is a sample of complaints appearing in several online forums regarding the SRX[9]:

74.     Complaints posted on carproblemzoo.com include[10]:

a.     **Failure Date: 01/22/2021**
Gradual dimming of headlight low beams over time, making them completely useless & unsafe at night. Must drive using high beams at all times. Safety hazard. (same issue as gm 2010-15 model litigation). Required to replace headlight assembly $2200. Contacted gm, who confirmed there is not yet a recall or lawsuit to reimburse for 2016 or later model repairs for the same known headlight failure as earlier models.

b.     **Failure Date: 10/02/2020**
The headlights have become dim and it is very hard to see at night. Gm knows about the problem but they have not issued a recall. Both head lamp assemblies need to be replaced on my 2016 Srx at a cost of $1700+. It is unsafe to drive this car at night.

c.     **Failure Date: 09/25/2020**
The lowbeams of my headlights are so dim I cannot drive at night. Don't feel safe at all. Took to a dealer and they wanted to replace the whole assembly at my expense which is $2k. I was told replacing the bulb will not fix situation as it is the housing that is faulty.

---

[9] Spelling and grammar mistakes appear as in original.
[10] https://www.carproblemzoo.com/cadillac/srx/2016/headlights-problems.php (last accessed September 28, 2021).

d.   **Failure Date: 03/05/2020**

The headlights are dim at night and almost translucent during the day. I understand that there is no recall at this time but the headlights are a safety issue. Not only it is a safety issue is a costly one at that which the owner has to foot the bill which is bad business and deceiving the Cadillac owners. This should be looked into because apperantly I am not the only one having this issue and gm should make good on this defect and show proper customer service to all owners.

75.   Complaints posted on vehiclehistory.com include[11]:

a.   **RC on January 29, 2021, Bad Headlights - An Accident in the Making**

Bad headlight problem. I have to drive with the high-beams on in order to be seen and to see. It's so bad, when others get in the car early in the morning or at night they tell me to turn the lights on. I learned there was a potential class action suit for SRX's with the same problem. The company settled with select owners. However, I couldn't get the time of day even though the dealership acknowledged the problem as being the same. They stated more people in my area or with a vehicle that was manufactured in the same plant had to complain about it before anything would be considered.

76.   Complaints on cadillacsociety.com include:

a.   **Vickie L Crabtree, August 5, 2020**

I purchased a 2016 SRX in May. They obviously did not fix the problem with the headlights as my 2016 has the same problem being reported on the 2010 thru 2015. I purchased a bumper to bumper warranty but I am being told by my dealer that it does not cover headlights or the housing. Sounds like it wouldn't matter, they would replace it with the same defective parts for $1600[12]

b.   **Dodie25, April 6, 2020, #75392**

I have been trying to find out why the 2016 Cadillac SRX is not included in the headlight recall. It is the same body style as the 2010-2015 SRX! I complained about the headlights while car was still under warranty and was told that Cadillac was not fixing them under warranty due to a class action lawsuit. Then I get a double whammy…my 2016 is not included in the recall and is now out of warranty!!! I have called Cadillac customer care twice and am still waiting for an explanation 3 weeks later. HELP PLEASE M Johnson[13]

c.   **papax2, January 29, 2021, #79375**

I have a 2016 SRX with headlight issue, dealer says, can't help you. If you have ANY SRX, get rid of it. Told Dealer and Cadillac. I will never Buy another Cadillac of any model and will ensure the word of mouth goes along way. When you don't cover SAFETY issues with your vehicles my family or friends will not be riding in a Cadillac.[14]

---

[11] https://www.vehiclehistory.com/report/cadillac/srx/2016/consumer-reviews (last accessed September 28, 2021).

[12] https://cadillacsociety.com/2020/03/10/owners-continue-to-struggle-with-cadillac-srx-headlights/ (last accessed September 28, 2021).

[13] https://cadillacsociety.com/topic/2016-srx-headlamps-dim/#post-75392 (last accessed June 1, 2021).

[14] https://cadillacsociety.com/topic/headlight-reimbursement/ (last accessed September 28,

d.    **MACarrie, February 11, 2021, #79919**

I keep seeing that the recall or reimbursement only covers the 2010 – 2015 Cadillac SRX, but I own a 2016 and have the same problems with the headlights. Can I get the reimbursement or will there be a recall on these lights? I need to know ASAP, because I'm tired of driving with my high beam lights on!!!!!![15]

e.    **Sthomas, April 2, 2021, #80978**

I too own a 2016 SRX with the same headlight problem. Just sent an email with the repair quote to the email address mention above. I'll update once I receive a response.[16]

77.    A complaint from carcomplaints.com includes:

a.    **<u>Nanci Bailey Bryan</u>**

My 2016 Cadillac SRX has headlights that are barely visible on dim and the Cue infotainment screen, which I have already had replaced once. The dealer is of no help and Cadillac said sorry, we can't help because your car is out of warranty. If there is a class action suit, I would like to join.[17]

78.    One complaint shows the Defect in a consumer complaint as early as January

2016:

a.    **January 15, 2016**

Heated seats not very warm, poor headlights, so so mileage.[18]

79.    Complaints were also posted on Amazon.com:

a.    **RICHARD E STARZYK, October 8, 2020**

Yes our 2016 Cadillac SRX has low beams so dim that driving at night is not possible. Headlights like brakes are Federal DOT approved and tested components. I am amazed that GM and the Cadillac Division of General Motors has not issued a recall and repaired all of the problematic headlight assemblies at no cost to the owners. File a report with the NHTSA about this defective headlight and the associated dangers. File complaints with your State, the BBB, and any GM divisions you can get ahold of. Use social media to increase awareness of this potentially deadly and VERY WELL KNOWN DEFECT![19]

---

2021).

[15] https://cadillacsociety.com/topic/srx-headlight-replacement-reimbursement/ (last accessed September 28, 2021).

[16] *Id.*

[17] https://www.carcomplaints.com/news/2019/cadillac-srx-headlight-lawsuit-lights-dim.shtml (last accessed September 28, 2021).

[18] https://www.thecarconnection.com/overview/cadillac_srx_2016 (last accessed September 28, 2021).

[19] https://www.amazon.com/ask/questions/TxRT04GO08YGIL (last accessed September 28, 2021).

80.     In addition, GM monitors customers' complaints made to NHTSA. Federal law requires automakers like Honda to be in close contact with NHTSA regarding potential automobile defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

81.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* GM is to interface with NHTSA to monitor complaints, respond to inquiries, conduct recalls, and assist NHTSA with investigations. Thus, GM knew or should have known of the many complaints about the Headlight Defect logged by NHTSA Office of Defect Investigation, and the content, consistency, and large number of those complaints alerted, or should have alerted, GM to the Headlight Defect.

82.     The following are some examples from owners and lessees of the Vehicles concerning the Defect available through NHTSA's website, www.safercar.gov.[20]

a.     **NHTSA ID Number:** 11417639
**Incident Date** May 18, 2021
**Consumer Location** CHATTANOOGA, TN
**Vehicle Identification Number** 3GYFNBE37GS****
The headlights are not bright enough they've never been bright enough it's almost like you don't have any headlights at night time if it's dark out. I even change them out once and it's like there wasn't enough power to them to make them bright. I have not very good Vision at night and I can't even really drive the car at night unless it's in the city. A couple of people I have told me they had the same problem with the headlights and even the guy at the auto place told me that his wife had the same car and he changed her headlights and it was still bad so he changed them back and that's exactly what I did. Hardly usable at all at night I

---

[20] Spelling and grammar mistakes appear as in original.

wish there was something they could do or find out if there is a flaw in the design because everyone I've talked to that has this year and type of car says the same exact thing and no one has given me any resolution on what they did they just lived with it. I love the car 100% in every other way but the headlights are a incredible Factor for night driving and since I do live somewhat in the country I always have to take the other vehicle at night time.

b.   **NHTSA ID Number:** 11406827
     **Incident Date** March 12, 2021
     **Consumer Location** WOLCOTTVILLE, IN
     **Vehicle Identification Number** 3GYFNBE34GS****
     HEADLIGHTS WHEN ON DIM DO NOT LIGHT UP THE ROADWAY. THE VEHICLE IS NOT SAFE TO DRIVE AT NIGHT UNLESS YOU DRIVE WITH THE HIGH BEAMS ON WHICH OF COURSE INFURIATES ONCOMING TRAFFIC. IF YOU LOOK ON THE INTERNET, YOU WILL FIND THAT MOST CADILLAC SRX FROM 2010 THROUGH 2016 HAVE THIS PROBLEM, YET NO RECALL. WHY?

c.   **NHTSA ID Number:** 11398977
     **Incident Date** December 2, 2020
     **Consumer Location** YUBA CITY, CA
     **Vehicle                    Identification                    Number** 3GYFNEE32GS****
     THE LOW BEAMS ON MY 2016 CADILLAC ARE EXTREMELY DIM AND UNSAFE FOR NIGHT DRIVING. THIS HAS BEEN AN ISSUE FOR SEVERAL YEARS. IT IS A LUXURY MODEL WITH NO FOG LIGHTS. THIS PROBLEM SHOULD BE THE CORRECTED BY GM/CADILLAC AND NOT THE OWNER. THIS IS AN EXTREMELY EXPENSIVE REPAIR AND IS CAUSING SERIOUS ISSUES WITH MANY SRX OWNERS. PREVIOUS YEARS ARE COVERED BY A RECALL, FOR SOME REASON THIS IS NOT.

d.   **NHTSA ID Number:** 11398148
     **Incident Date** February 2, 2021
     **Consumer Location** BOAZ, AL
     **Vehicle Identification Number** 3GYFNBE38G5****
     MY HEAD LIGHTS DON'T WORK GOOD AT ALL AND I HAVE GOT STOPPED BY POLICE SEVERAL TIMES AN GOT A TICKET FOR BRIGHT LIGHTING AND STOPPED FOR DRIVING WITH NO LIGHTS ON WHEN I HAD DEM ON BUT THE POLICE COULDN'T EVEN TELL I HAD ANY ON AND I HAVE CALLED CADILLAC ON MANY OCCASIONS AND ALL THEY SAY IS THEY CAN'T FIX THEM UNDER A RECALL THAT I WILL HAVE TO PAY 3000 TO $3500 TO HAVE THEM FIXED, SAID THEY HAVE TO REPLACE THE WHOLE ASSEMBLY NOT JUST LIGHTS AND I THINK THIS IS VERY MUCH A SAFETY ISSUE WHEN I CAN'T SEE AT NIGHT WITH LIGHTS ON DIM AND I AM TIRED OF GETTING TICKETS FOR THE LIGHTS BEING ON BRIGHT SND WHEN YOU PAY OVER $45 THOUSAND DOLLARS FOR A VEHICLE YOU WOULD THINK CADILLAC WOULD FIX IT AND IT WOULD BE THERE RESPONSIBILITY TO PAY FOR IT

e.   **NHTSA ID Number:** 11394811
     **Incident Date** January 22, 2021
     **Consumer Location** FRISCO, TX

**Vehicle Identification Number** 3GYFNBE30GS****
GRADUAL DIMMING OF HEADLIGHT LOW BEAMS OVER TIME, MAKING THEM COMPLETELY USELESS & UNSAFE AT NIGHT. MUST DRIVE USING HIGH BEAMS AT ALL TIMES. SAFETY HAZARD. (SAME ISSUE AS GM 2010-15 MODEL LITIGATION). REQUIRED TO REPLACE HEADLIGHT ASSEMBLY $2200. CONTACTED GM, WHO CONFIRMED THERE IS NOT YET A RECALL OR LAWSUIT TO REIMBURSE FOR 2016 OR LATER MODEL REPAIRS FOR THE SAME KNOWN HEADLIGHT FAILURE AS EARLIER MODELS.

f.   **NHTSA ID Number:** 11306202
**Incident Date** December 1, 2017
**Consumer Location** DETROIT, MI
**Vehicle Identification Number** 3GYFNAE30GS****
DIM HEADLIGHTS DANGEROUS TO DRIVE AT NIGHT. COSTLY $4000.00 REPAIR.

g.   **NHTSA ID Number:** 11385810
**Incident Date** January 1, 2019
**Consumer Location** DAVIE, FL
**Vehicle Identification Number** 3GYFNBE3XGS****
MY HEADLIGHTS KEEP GETTING DIMMER AND DIMMER AS TIME GOES ON. MY VEHICLE ONLY HAS 40,000 MILES, BUT I STARTED NOTICING AT LEAST 5,000 MILES AGO THAT WHILE DRIVING DOWN THE HIGHWAY AT NIGHT THAT IT APPEARED AS IF I BARELY HAD ANY HEADLIGHTS SHINING IN FRONT OF ME. I WOULD TURN THEM OFF AND ON AGAIN, THINKING THEY WERE OFF BUT COULD BARELY TELL THE DIFFERENCE. WHEN I TURN CORNERS, I COULDN'T SEE WHERE THE ROAD WAS OR CURBS AND HAD TO ROLL DOWN MY DRIVERS AND/OR PASSENGER WINDOWS TO SEE WHERE I WAS GOING AND TO AVOID MISSING ROAD OR HITTING SOMETHING. I DID A LITTLE RESEARCH AND FOUND THAT THERE WAS A CLASS ACTION LAWSUIT FOR 2010-2015 SRX HEADLIGHTS WITH THE SAME EXACT PROBLEM - UPWARDS OF 300,000 VEHICLES INVOLVED. CADILLAC AGREED TO REPLACE THOSE HEADLIGHTS, BUT USED THE EXACT SAME TYPE OF HEADLIGHT FOR THE REPLACEMENTS AND PEOPLE ARE AGAIN HAVING THE SAME PROBLEM...... LIGHTS DIMMING OVER TIME. I AM AFRAID TO DRIVE AT NIGHT NOW AS IT HAS GOTTEN SO BAD THAT I FEEL MY LIFE IS IN DANGER. I DON'T WANT TO DRIVE WITH BRIGHT LIGHTS ON ALL THE TIME AS THAT BLINDS ONCOMING TRAFFIC AND CREATES ANOTHER HAZARD. HTTPS://CADILLACSOCIETY.COM/2020/03/10/OWNERS-CONTINUE-TO-STRUGGLE-WITH-CADILLAC-SRX-HEADLIGHTS/ I BOUGHT AN EXTENDED WARRANTY AND WAS TOLD IT WAS BUMPER TO BUMPER BUT LO AND BEHOLD, IT DOESN'T COVER HEADLIGHTS WHICH I WAS TOLD BY CADILLAC DEALER THAT THEY WERE $900 APIECE.

h.   **NHTSA ID Number:** 11372347
**Incident Date** October 30, 2019
**Consumer Location** Unknown
**Vehicle Identification Number** 3GYFNBE32GS****
TL* THE CONTACT OWNS A 2016 CADILLAC SRX. THE CONTACT STATED THAT

THE HEADLIGHTS WERE DIM AND FAILED TO PROVIDE ADEQUATE LIGHTING WHILE DRIVING. THE VEHICLE WAS TAKEN TO MOSES CADILLAC BUICK GMC TRUCK INC (1406 WASHINGTON ST E, CHARLESTON, WV 25301) AND THE CONTACT WAS INFORMED THAT THE WEATHER SEALS IN THE HEADLIGHT HOUSINGS ALLOWED MOISTURE TO ENTER THE LIGHTS AND CORRODED THE REFLECTORS. THE CONTACT WAS INFORMED THAT THE HEADLIGHT ASSEMBLIES NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND PROVIDED A CASE NUMBER. THE FAILURE MILEAGE WAS APPROXIMATELY 94,000.

i.   **NHTSA ID Number:** 11363857
**Incident Date** October 12, 2020
**Consumer Location** FRIENDSWOOD, TX
**Vehicle Identification Number** 3GYFNBE31GS****
WE ARE HAVING PROBLEMS WITH THE HEADLIGHTS. THERE IS GOING TO BE A PROBLEM WHEN SOMEONE IS KILLED. I DON'T UNDERSTAND BY CADALLIC WON'T FIX THE PROBLEM THEY REPLACE THE LIGHTS ON 2000 THRU 2015 BUT NOT THE 2016. I HAVE INSTRUCTED MY CHILDREN TO FILE SUIT WITH CADILLAC IF SOMETHING SHOULD HAPPEN TO MY HUSBAND AND I IN A CAR WRECK OR SOMEONE HURTING ME CAUSE MY BRIGHTS ARE ON. I HAVE WROTE A LETTER TO CADILLAC SO THEY HAVE ONE ON FILE.

j.   **NHTSA ID Number:** 11361050
**Incident Date** September 25, 2020
**Consumer Location** FARMINGTON HILLS, MI
**Vehicle Identification Number** 3GYFNBE30GS****
THE LOWBEAMS OF MY HEADLIGHTS ARE SO DIM I CANNOT DRIVE AT NIGHT. DON'T FEEL SAFE AT ALL. TOOK TO A DEALER AND THEY WANTED TO REPLACE THE WHOLE ASSEMBLY AT MY EXPENSE WHICH IS $2K. I WAS TOLD REPLACING THE BULB WILL NOT FIX SITUATION AS IT IS THE HOUSING THAT IS FAULTY.

k.   **NHTSA ID Number:** 11210448
**Incident Date** May 28, 2019
**Consumer Location** DALLAS, TX
**Vehicle Identification Number** 3GYFNBE32GS****
EXTERIOR LIGHTING: THE HEAD LIGHT LOW BEAMS ON THIS VEHICLE ARE INFERIOR AND A SAFETY HAZARD. THEY DO NOT ILLUMINATE FAR ENOUGH IN FRONT OF THE CAR AND ARE NOT BRIGHT ENOUGH. I HAVE HIT SEVERAL CURBS AT NIGHT JUST BECAUSE YOU JUST CAN'T SEE THEM GOING AROUND CURBS OR AT INTERSECTIONS WITH THE LIGHTS ON THIS SUV. TALKED TO DEALER ABOUT REPLACEMENT WITH AUTO PART STORE HEADLAMPS, AND THE RESPONSE WAS IT WOULD VOID WARRANTY ON THE HEAD LIGHTS (BREAK THE SEAL) AND WOULD COST SEVERAL THOUSAND DOLLARS. AND WOULD NOT IMPROVE THE LIGHTING. LIKE OTHERS, I DRIVE WITH MY HIGH BEAMS ON, EVEN IN THE CITY SO I CAN SEE PEDESTRIANS AND CURBS. GM SHOULD RECALL THESE HEADLAMPS AND REPLACE FOR FREE BEFORE PEOPLE START GETTING KILLED.

l.   **NHTSA ID Number:** 11185644
**Incident Date** February 28, 2019
**Consumer Location** WINFIELD, AL
**Vehicle Identification Number** 3GYFNBE32GS****
WE ARE HAVING ISSUES WITH THE LOW BEAM HEAD LAMPS. THEY ARE NOT SAFE!! WE HAVE CONTACTED THE DEALER ON SEVERAL OCCASIONS FOR HELP, ONLY TO GET A "IT'S NOT OUR PROBLEM" RESPONSE. GM IS SURELY AWARE, AS A SEARCH FOR HELP WITH THE ISSUE POPS UP MANY COMPLAINTS AND POSSIBLE CLASS ACTION LAW SUITS CURRENTLY IN THE WORKS. WHAT BRINGS ME HERE NOW IS, MY WIFE RECENTLY DONE SOME SERIOUS DAMAGE TO THE CAR AND MINOR PERSONAL INJURY WHEN SHE HIT AN OBJECT IN THE ROAD THAT COULD HAVE AND SHOULD HAVE BEEN AVOIDED IF SHE COULD HAVE SEEN IT!! WE ARE JUST THANKFUL THIS WAS NOT A PERSON. I WOULD GLADLY TESTIFY THAT THIS COULD ACTUALLY BE A POSSIBILITY IF SOMETHING IS NOT DONE WITH THESE LIGHTS. WE WERE TOLD WE COULD REPLACE WITH THE SAME LIGHT, AT OUR COST (APPX. $1500.00) WHICH I'M SURE WOULD SOON HAVE THE SAME PROBLEM. WHICH SHOULD NOT BE A PROBLEM AT ALL WITH A TWO YEAR OLD $50,000.00 CAR. PLEASE HELP US AND ALL THE OTHERS WITH CORRECTING THIS, BEFORE SOMETHING REALLY BAD OR DEADLY HAPPENS, IF IT HASN'T ALREADY. WE HAVE TALKED TO SEVERAL FRIENDS IN OUR HOME TOWN WITH THE SAME CAR WITH THE SAME PROBLEM.

m.   **NHTSA ID Number:** 11161504
**Incident Date** December 15, 2018
**Consumer Location** PRAIRIEVILLE, LA
**Vehicle Identification Number** 3GYFNBE31GS****
THE LOW BEAM (DIM LIGHTS) ARE HORRIBLE. I ALMOST HIT A MAN WALKING ON THE SIDE OF THE ROAD LAST NIGHT. YOU CANNOT SEE 30' IN FRONT OF THE VEHICLE WHEN LIGHTS ARE ON DIM. YOU HAVE TO DRIVE WITH THE HIGH BEAMS ON. THE HIGH BEAM WORKS GREAT, BUT VEHICLES COMING AT YOU ARE GETTING BLINDED BY YOUR HIGH BEAMS. YOU SWITCH TO LOW BEAM, THEN YOU CANNOT SEE! I HAVE SEEN ALL THE COMPLAINTS ON THE INTERNET. I CANNOT BELIEVE THIS ISSUE HASN'T BEEN RECALLED. SHAME ON THE GOVERNMENT FOR NOT FIXING THIS SAFETY ISSUE.

83.   GM has specifically instructed purchasers and lessees of the Vehicles that they should contact the NHTSA if they believe their Vehicle has a defect which could cause a crash or could cause injury or death.[21]

84.   GM had knowledge that its misrepresentations and omissions regarding the safety

---

[21] *See, e.g.*, 2016 Owner's Manual at 356.

and performance of the Vehicle were misleading, yet it continued to make the same misrepresentations and omissions regarding the 2016 Cadillac SRX to Plaintiff and members of the proposed Classes, despite the fact that GM knew that the Vehicles were defective.

85.     Defendant's marketing and advertising practices are clearly meant to mislead consumers as to the safety and performance of the Cadillac SRX.  As a direct and proximate result of Defendant's conduct, Plaintiff and the proposed Classes have suffered, and continue to suffer, injury in fact, ascertainable loss, and lost money.  Defendant, despite having knowledge that its representations and omissions are misleading to Plaintiff and the proposed Classes, continues to market and advertise the Cadillac SRX in a deceptive manner.

86.     Plaintiff and the proposed Classes are at risk of suffering further injury if the relief sought is not granted.

## **TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL**

87.     Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the Headlight Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiff and members of the Class were deceived regarding the Vehicles and could not reasonably discover the Headlight Defect or Defendant's deception with respect to the Headlight Defect.  Defendant and its agents continue to deny the existence and extent of the Headlight Defect, even when questioned by Plaintiff and members of the Class.

88.     Plaintiff and members of the Class did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendant was concealing a defect and/or the Vehicles contained the Headlight Defect and the corresponding safety risk.  As alleged herein, the existence of the Headlight Defect was material to Plaintiff and members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiff and members of the Class could not have discovered through the exercise of reasonable diligence the

existence of the Headlight Defect or that Defendant was concealing the Headlight Defect.

89.     At all times, Defendant is and was under a continuous duty to disclose to Plaintiff and members of the Class the true standard, quality and grade of the Vehicles and to disclose the Headlight Defect and corresponding safety risk due to their exclusive and superior knowledge of the existence and extent of the Headlight Defect in Vehicles.

90.     Defendant knowingly, actively and affirmatively concealed the facts alleged herein. Plaintiff and members of the Class reasonably relied on Defendant's knowing, active, and affirmative concealment.

91.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment, and Defendant is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

92.     Plaintiff brings this lawsuit, both individually and as a class action, on behalf of similarly situated purchasers and lessees of the Vehicles pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3) and seek to represent the following Class defined as:

**Nationwide Class (represented by Plaintiff Robert Elliott)**
All owners and lessees of model year 2016 Cadillac SRX purchased or leased in the United States.

93.     In the alternative, Plaintiff brings this class action on behalf of the following Sub-Class for the purposes of Plaintiff's state law claims, defined as follows:

**Virginia Sub-Class (represented by Plaintiff Robert Elliott)**
All owners and lessees of model year 2016 Cadillac SRX purchased or leased in Virginia.

Excluded from the Nationwide Class and the Virginia Sub-Class (collectively and defined herein, the "Class" or "Classes") are Defendant, as well as Defendant's affiliates, employees, officers and directors, and the Judge to whom this case is assigned.  Plaintiff reserves the right to

amend the definition of the Classes if discovery and/or further investigation reveal that the Classes should be expanded or otherwise modified.

94.   **Numerosity/Impracticability of Joinder:** There are so many members of the Classes that joinder of all members is impracticable.  The reported sales of the Cadillac SRX in the United States totaled up to 68,850 vehicles in 2015 and up to 22,139 vehicles in 2016. Plaintiff estimates that there are thousands of members in the Classes who are readily identifiable from information and records in Defendant's possession, custody, or control.  The disposition of these claims will provide substantial benefits to the members of the Classes.

95.   **Commonality and Predominance:** There is a well-defined community of interest and common questions of law and fact that predominate over any question affecting only individual members of the Classes.  These common legal and factual questions, which do not vary from members of the Classes, and which may be determined without reference to the individual circumstances of any members of the Classes, include, but are not limited, to the following:

    a.   Whether the Vehicles suffer from the Headlight Defect;

    b.   Whether the Headlight Defect results in diminished light output or no light at all;

    c.   Whether the defects relating to the headlights constitute an unreasonable safety risk;

    d.   Whether the Vehicles have suffered a diminution of value as a result of their defective components;

    e.   Whether Defendant's marketing, advertising and promotion of the Vehicles was false and misleading;

    f.   Whether Defendant concealed facts from Plaintiff and members of the Classes about the performance and safety of the Vehicles and about the Headlight Defect;

    g.   Whether Defendant knew, or should have known, that their representations were false, or that the representations omitted material information;

    h.   Whether Defendant had a duty to disclose the Headlight Defect to Plaintiff and

members of the Classes;

    i.    Whether Defendant's conduct was a violation of the Magnuson-Moss Warranty Act;

    j.    Whether Defendant's conduct is fraudulent;

    k.    Whether Defendant has been unjustly enriched;

    l.    Whether Defendant's conduct was a violation of the Virginia Consumer Protection Act;

    m.  Whether Defendant's conduct as alleged herein violates public policy; and

    n.   Whether Plaintiff and the members of the Classes are entitled to damages, restitution, equitable relief, and/or other damages and other relief, and, if so, the amount and nature of such relief.

96.    **Typicality and Adequacy:** Plaintiff's claims are typical of the claims of their respective proposed Classes, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Classes. Plaintiff does not have any interests antagonistic to those of their respective Classes. Plaintiff's counsels are experienced in the prosecution of this type of litigation. The questions of law and fact common to the members of the Classes, some of which are set forth above, predominate over any questions affecting only individual members of the Classes.

97.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for members of the Classes to prosecute their claims individually. The litigation and trial of the Class-wide claims are manageable.

98.    Unless the Classes are certified, Defendant will improperly retain monies that it received from Plaintiff and members of the Classes as a result of its conduct. Unless Defendant is required to change its unfair and deceptive practices, it will continue to commit the violations and the members of the Classes, and the general public will continue to be misled.

99.     Defendant has acted and refused to act on grounds generally applicable to the Classes, making appropriate final injunctive relief with respect to the Classes as a whole.

## COUNT I
### Violation of the Magnuson–Moss Warranty Act
### 15 U.S.C. §§ 2301, *et seq.*
### (On Behalf of the Nationwide Class or, in the alternative,
### the Virginia Sub-Class)

100.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 99 as if fully set forth herein.

101.     Plaintiff Robert Elliott brings this cause of action on behalf of himself and on behalf of each of the Classes.

102.     This Court has jurisdiction to decide claims brought under 15 U.S.C. section 2301 by virtue of 28 U.S.C. sections 1332(a)-(d).

103.     Plaintiff and each class members are a "consumer" as defined in 15 U.S.C. section 2301(3).

104.     Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. sections 2301(4)-(5).

105.     The Vehicles are each a "consumer product" as defined in 15 U.S.C. section 2301(1).

106.     15 U.S.C. section 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

107.     15 U.S.C. section 2304(a)(1) requires Defendant, as a warrantor, to remedy any defect, malfunction or nonconformance of the Vehicles within a reasonable time and without charge to the Plaintiff and the Class Members.

108.     Defendant provided Plaintiff and Class Members with an implied warranty of merchantability in connection with the purchase or lease of their Vehicles within the meaning of

15 U.S.C. section 2301(7). As a part of the implied warranty of merchantability, Defendant warranted that the Vehicles were fit for their ordinary purpose as safe passenger motor vehicles would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

109.    The Vehicles share common design defects in that they are equipped with the Headlight Defect and Class Members are unable to use their low-beam lights while driving in low-visibility conditions. GM has tacitly admitted that the Vehicles suffer from the Headlight Defect of its own making, but Defendant's refusal to cover replacement or repair costs and acknowledge the Headlight Defect in a recall in order to inform current and future purchasers of the Vehicles is insufficient.

110.    The Defendant's failure and/or refusal to repair the Headlight Defect within a reasonable time constitutes a breach of the implied warranties.

111.    Plaintiff and the Class Members notified Defendant of the breach within a reasonable time and/or were not required to do so. Defendant was also on notice of the Headlight Defect from, among other sources, the complaints and service requests it received from Class Members and its dealers.

112.    Despite repeated demands, Defendant has failed to remedy the Headlight Defect within a reasonable time, and/or a reasonable number of attempts, thereby breaching the implied warranties applicable to the Vehicles.

113.    As a result of Defendant's breaches of the implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiff and Class Members have suffered damages.

114.    Plaintiff and Class Members have had sufficient direct dealings with either Defendant or its agents (dealerships and distributors) to establish privity of contract between

Defendant and Plaintiff and Class Members. Nonetheless, privity is not required here because Plaintiff and Class Members are intended third-party beneficiaries of Defendant's implied warranty between Defendant and its dealers. The dealers were not intended to be the ultimate consumers of the Vehicles as the implied warranty was designed for and intended to benefit consumers.

115.    Plaintiff and Class Members would suffer economic hardship if they returned their Vehicles but did not receive the return of all payments made by them. Because Defendant is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and Class Members have not reaccepted their Vehicles by retaining them.

116.    Pursuant to 15 U.S.C. § 2310(d)(3), the amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25 and the amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs. Plaintiff, individually and on behalf of other Class Members, seek all damages permitted by law, including diminution in value of their Vehicles, in an amount to be proven at trial.

117.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and Class Members in connection with the commencement and prosecution of this action.

## <u>COUNT II</u>
**Fraud by Omission or Fraudulent Concealment**
**(On Behalf of the Nationwide Class or, in the alternative,**
**the Virginia Sub-Class)**

118.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 99 as if fully set forth herein.

119.    Plaintiff Robert Elliott brings this cause of action on behalf of himself and on behalf of each of the Classes.

120.    Defendant knew that the Class Vehicles suffered from an inherent Headlight Defect, were defectively designed and/or manufactured and were not suitable for their intended use.

121.    Defendant concealed from and failed to disclose to Plaintiff and the Class Members the defective nature of the Class Vehicles.

122.    Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles because:

a.    Defendant was in a superior position to know the true state of facts about the Headlight Defect contained in the Class Vehicles;

b.    The omitted facts were material because they directly impact the safety of the Class Vehicles;

c.    Defendant knew the omitted facts regarding the Headlight Defect were not known to or reasonably discoverable by Plaintiff and the Class Members;

d.    Defendant made partial disclosures about the quality of the Class Vehicles without revealing their true defective nature; and,

e.    Defendant actively concealed the defective nature of the Class Vehicles from Plaintiff and the Class Members.

123.    The facts concealed, or not disclosed, by Defendant to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price for them. Whether or not a vehicles' headlights work is a material safety concerns. Had Plaintiff and the Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles, or would have paid less for them.

124.    GM concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles in order to induce Plaintiff and the Class

Members to act thereon. Plaintiff and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiff's and the Class Members' purchase or lease of Defendant's defective Class Vehicles.

125.    Defendant continued to conceal the defective nature of the Class Vehicles even after Class Members began to report the problems. Indeed, Defendant continues to cover up and conceal the true nature of the problem today.

126.    As a direct and proximate result of Defendant's misconduct, Plaintiff and the Class Members have suffered and will continue to suffer actual damages. Plaintiff and the Class reserve their right to elect either to (a) rescind their purchase or lease of the defective Vehicles and obtain restitution, or (b) affirm their purchase or lease of the defective Vehicles and recover damages.

127.    Had Plaintiff known this information, they would not have purchased or would have paid significantly less for their Class Vehicles.

128.    GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class Members' rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
### Unjust Enrichment
**(On Behalf of the Nationwide Class or, in the alternative, the Virginia Sub-Class)**

129.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 99 as if fully set forth herein.

130.    Plaintiff Robert Elliott brings this cause of action on behalf of himself and on behalf of each of the Classes.

131.    As a direct and proximate result of Defendant's misrepresentations about the reliability and safety of the Vehicles and failure to disclose known defects, Defendant has profited

through the sale and lease of the Vehicles. Although these Vehicles are purchased through Defendant's agents, the money from the vehicle sales flows directly back to Defendant.

132.    As a result of its wrongful acts, concealments, and omissions of the Headlight Defect in its Vehicles as set forth above, Defendant charged a higher price for the Vehicles than the Vehicles' true value.  Plaintiff and the members of the Class paid that higher price for the Vehicles due to Defendant's authorized distributors and dealers, which are in Defendant's control. Defendant also reaps huge profits from the sale of the Vehicles through its authorized distributors and dealers, netting $122.49 billion in revenue, according to marketwatch.com, for the fiscal year 2020 alone. *See* https://www.marketwatch.com/investing/stock/gm/financials (last accessed August 24, 2021).

133.    Additionally, as a direct and proximate result of Defendant's failure to disclose the known Headlight Defect in the Vehicles, Plaintiff and the Class Members have vehicles that will require high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant.

134.    Defendant has been unjustly enriched due to the known Headlight Defect in the Vehicles through the use money paid that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiff and the Class Members.

135.    Defendant has been unjustly enriched and should be required to make restitution to the Class Members and any other just and proper relief as appropriate.

**COUNT IV**
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of the Nationwide Class or, in the alternative,**
**the Virginia Sub-Class)**

136.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 99 as if fully set forth herein.

137.    Plaintiff Robert Elliott brings this cause of action on behalf of himself and on behalf

of each of the Classes.

138.    GM is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

139.    With respect to leases, GM is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

140.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law.

141.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary for which vehicles are used is implied by law under the Uniform Commercial Code and relevant state law.

142.    GM knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. GM directly sold and marketed the Class Vehicles to customers through its agents, the authorized dealers, like those from whom Plaintiff and the members of the Classes bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. GM knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Plaintiff and the members of the Classes, with no modification to the defective Class Vehicles.

143.    Defendant provided Plaintiff and the members of the Classes with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

144.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles that were manufactured, supplied, distributed, and/or sold by GM were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

145.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale

and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the members of the Classes with reliable, durable, and safe transportation. Instead, the Class Vehicles were and are defective at the time of sale or lease and thereafter as more fully described above. Defendant knew of this defect at the time these sale or lease transactions occurred.

146.    As a result of GM's breach of the applicable implied warranties, Plaintiff and the members of the Classes of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Headlight Defect, Plaintiff and the members of the Classes were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

147.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of the Uniform Commercial Code and relevant state law.

148.    Plaintiff and the members of the Classes have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

149.    Plaintiff and the members of the Classes were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of warranty would have been futile. Defendant was also on notice of the Headlight Defect from the complaints and service requests it received from Plaintiff and the members of the Classes and through other internal sources.

150.    As a direct and proximate cause of GM's breach, Plaintiff and the members of the Classes suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Plaintiff and the members of the Classes have incurred or will incur economic damages at the point of repair in

the form of the cost of repair as well as additional losses. Had Plaintiff known this information, they would not have purchased or would have paid less for their Class Vehicles.

151.    As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiff and the members of the Classes have been damaged in an amount to be proven at trial.

## COUNT V
### Violation of the Virginia Consumer Protection Act
### Va. Code Ann. §§ 59.1-196, *et seq.*
### (On Behalf of the Virginia Sub-Class)

152.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 99 as if fully set forth herein.

153.    Plaintiff Robert Elliott (the "Virginia Plaintiff") bring this cause of action on behalf of himself and on behalf of the members of the Virginia Sub-Class.

154.    GM, the Virginia Plaintiff, and the Virginia Sub-Class Members are "persons" as defined by the Virginia Consumer Protection Act ("Virginia CPA"). *See* VA. Code Ann. Section 59.1-198.

155.    The sale or lease of the Class Vehicles by the Virginia Plaintiff and members of the Virginia Sub-Class were for personal, family or household purposes and are "consumer transaction[s]" as defined by VA. Code Ann. Section 59.1-198.

156.    The Class Vehicles are "goods" as defined by VA. Code Ann. Section 59.1-198.

157.    GM is a "supplier" as defined by VA. Code Ann. Section 59.1-198.

158.    The Virginia CPA makes unlawful "fraudulent acts or practices." VA. Code Ann. Section 59.1-200(A).

159.    GM violated VA. Code Ann. Section 59.1-200(A) by, inter alia: (1) "[m]isrepresenting that the goods or services have certain quantities, characteristics, ingredients, uses, or benefits;" (2) "[m]isrepresenting that the goods or services are of a particular standard,

quality, grade, style, or model;" (3) "[a]dvertising goods or services with the intent not to sell them as advertised;" and (4) "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

160. By failing to disclose the Defect, by concealing the Defect, by marketing its vehicles as safe, reliable, well-engineered, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, performance and reliability, and stood behind its vehicles after they were sold, GM knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. GM systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and the Defect in the course of its business.

161. GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

162. Defendant's unfair and deceptive acts or practices occurred repeatedly in GM's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

163. GM knew that the Class Vehicles suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

164. GM knew or should have known that its conduct violated the Virginia CPA.

165. Defendant was under a duty to the Virginia Plaintiff and the Virginia Sub-Class Members to disclose the defective nature of the Class Vehicles because:

      a.     Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles;

      b.      Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles; and

      c.      Defendant actively concealed the defective nature of the Class Vehicles from the Virginia Plaintiff and the Virginia Sub-Class Members at the time of sale and thereafter.

166.    By failing to disclose the Headlight Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

167.    The facts concealed or not disclosed by Defendant to the Virginia Plaintiff and the Virginia Sub-Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendant's Class Vehicles, or to pay less for them. Whether or not a vehicle has operating headlights is a material safety concerns. Had the Virginia Plaintiff and the Virginia Sub-Class Members known that the Class Vehicles suffered from the Headlight Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

168.    The Virginia Plaintiff and the Virginia Sub-Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Headlight Defect. That is the reasonable and objective consumer expectation for vehicles.

169.    Defendant's unlawful acts and practices affect the public interest, and trade and commerce in the Commonwealth of Virginia, and present a continuing safety hazard to the Virginia Plaintiff and the members of the Virginia Sub-Class.

170.    As a direct and proximate result of Defendant's conduct and violations of the Virginia CPA, the Virginia Plaintiff and members of the Virginia Sub-Class have suffered actual damages and/or injury in fact, including: (1) out-of-pocket monies for diagnosis and repair of the Class Vehicles, including replacement of parts, due to the Defect; (2) deprivation of the benefit of

the bargain at the time of purchase or lease, including the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defect; and/or (3) the diminished resale value of the Class Vehicles containing the Defect.

171.   The Virginia Plaintiff and members of the Virginia Sub-Class seek actual damages against Defendant in an amount to be determined at trial and/or statutory damages pursuant to the Virginia CPA based on Defendant's wanton and willful conduct, costs, attorneys' fees, restitution, disgorgement of funds, and any other just and proper relief available under the Virginia CPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the proposed Classes, pray for judgment as follows:

a) Certification of the Nationwide Class and Virginia Sub-Class under Federal Rule of Civil Procedure 23;

b) Appointment of Plaintiff as representatives of the Nationwide Class and the undersigned counsel as Class counsel;

c) Appointment of Plaintiff Robert Elliott as representative of the Virginia Sub-Class, and the undersigned counsel as Class counsel;

d) Compensatory and other damages for economic and non-economic damages;

e) Awarding restitution and disgorgement of Defendant's revenues or profits to Plaintiff and the members of the proposed Classes;

f) An Order requiring Defendant to cease and desist from engaging in the alleged wrongful conduct and to engage in a corrective advertising campaign;

g) Statutory pre-judgment and post-judgment interest on any amounts;

h) Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

i) Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: October 29, 2021

/s/ David H. Fink
**FINK BRESSACK**
David H. Fink (P28235)
Nathan J. Fink (P75185)
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com


**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Michael F. Ram*
Marie N. Appel*
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
mram@forthepeople.com
mappel@forthepeople.com

**TURKE STRAUSS, LLP**
Samuel J. Strauss
613 Williamson Street, Suite 100
Madison, WI 53703
Telephone: (608) 237-1775
sam@turkestrauss.com


*Attorneys for Plaintiff and the Proposed*
*Classes*

*Application for admission to be submitted