UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ELLIOTT, on behalf of
himself and all others similarly situated,

       Plaintiff,

    v.

GENERAL MOTORS LLC,

       Defendant.

_____/

Case No. 21-12561

Hon. George Caram Steeh

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION TO DISMISS (ECF NO. 10)

Before the court is Defendant General Motors LLC's motion to
dismiss Plaintiff's class action complaint, which alleges that GM sold
vehicles with defective headlights. The court finds that Plaintiff's warranty
claim is untimely and that he has failed to plausibly allege that GM
committed fraud by knowingly selling defective vehicles. As explained
below, Plaintiff has failed to state a claim and the court will grant
Defendant's motion.

## BACKGROUND FACTS

Plaintiff Robert Elliott is a Virginia resident. General Motors
manufactures vehicles, including those sold under the Cadillac brand. In

-1-

July 2016, Plaintiff purchased a used 2016 Cadillac SRX with approximately 22,000 miles on the odometer, from Suttle Motors in Newport News, Virginia. Plaintiff began to have problems with the vehicle's headlights in January 2021, when the headlights began to dim. Plaintiff alleges that the problem became progressively worse, such that he was unable to drive safely at night.

Plaintiff took his vehicle to Suttle Motors for repairs in June 2021. He was informed that that the headlight seals had eroded and the moisture caused damage to the reflectors inside the headlights, which led to the dim output. Suttle Motors replaced the headlights at a cost of $1600. However, Plaintiff alleges that two months later, one of the headlights began experiencing the same dimness problem. Plaintiff plans to return to the dealer for another repair or replacement. ECF No. 1 at ¶ 68.

Plaintiff contends that the headlight problem he experienced is the result of a defect ("Headlight Defect"). In particular, he alleges that "the seals GM uses in the Vehicles headlights' exterior housing units wear out prematurely, thereby allowing moisture to accumulate and condense. The moisture damages the assemblies' internal components, and causes the headlights to malfunction and/or fail because it corrodes the lamp assembly components and/or because it causes electrical shorts." ECF No. 1 at ¶ 21.

-2-

Additionally, "the vents that allow air flow to maintain pressure and prevent the lenses from cracking increase the tendency for water to accumulate and condense in the housing units. These defects result in damage to assembly components, such as corroding igniters and burnt-out bulbs, resulting in the Headlight Defect." *Id.* at ¶ 22.

Plaintiff alleges that GM has been aware of the Headlight Defect since 2010 because the same defect affected the 2010-2015 SRX models. ECF No. 1 at ¶¶ 5, 29. GM has issued Technical Service Bulletins ("TSBs"), which inform dealers about repairs, regarding headlight issues that Plaintiff claims relate to the Headlight Defect. *Id.* at ¶¶ 40-47. Plaintiff asserts that the fixes set forth in the relevant TSBs are inadequate to resolve the headlight problem, as the failed parts are replaced with "the very same defectively designed parts and components." *Id.* at ¶ 47.

GM issued a Customer Satisfaction Campaign regarding the 2010 SRX, wherein the company offered to reimburse customers who paid to repair their headlamps. *Id.* at ¶ 52. In 2019, a class action involving the Headlight Defect was settled on behalf of 2010-2015 SRX customers in California and Florida. *Id.* at ¶ 53. GM also sent a letter to 2011-2015 SRX customers regarding "issues that could cause moisture to accumulate in

[SRX] headlamp capsules." *Id.* at ¶ 54. GM offered to reimburse these customers for headlight repairs. *Id.*

Plaintiff alleges that the Headlight Defect is the same in the 2016 SRX as in the 2011-2015 SRX models. *Id.* at ¶ 55. Plaintiff asserts that GM has concealed its knowledge of the defect and has refused to recall or extend warranties to repair the 2016 SRXs.

Plaintiff seeks to represent a nationwide class of 2016 Cadillac SRX owners and lessees and/or a class of Virginia 2016 SRX owners and lessees. The complaint alleges the following claims: Count I, Magnuson-Moss Warranty Act; Count II, fraudulent concealment; Count III, unjust enrichment; Count IV, breach of implied warranty of merchantability; and Count V, Virginia Consumer Protection Act (on behalf of the Virginia sub-class only). Defendant argues that Plaintiff has failed to state a claim under Rule 12(b)(6) and lacks standing to represent a class under Rule 12(b)(1).

<u>LAW AND ANALYSIS</u>

I.   <u>Rule 12(b)(6) Standard</u>

To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft*

-4-

*v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted).

"Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a motion to dismiss, the court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

A.   <u>Implied Warranty of Merchantability</u>

Defendant makes several arguments in favor of dismissing Plaintiff's implied warranty claim. Because the court finds that this claim is barred by the statute of limitations, it need not consider Defendant's additional arguments.

The parties agree that Virginia law applies to Plaintiff's state law claims. Virginia has adopted Section 2 of the Uniform Commercial Code, which applies to the sale of goods, including vehicles. Section 2-725 of the UCC provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Va. Code Ann. § 8.2-725. Except for certain express warranties, a "breach of warranty occurs when tender of delivery is made." *Id.* "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.*; *see Luddeke v. Amana Refrigeration, Inc.,* 239 Va. 203, 205, 387 S.E.2d 502, 503 (1990) (holding that implied warranty claim filed five years after delivery of item was time barred under Virginia law).

Here, Plaintiff purchased his vehicle in July 2016 and filed this action on October 29, 2021, well outside of the four-year statute of limitations. *See* ECF No. 13 at PageID 184. Plaintiff argues that the statute of limitations

should be tolled based upon GM's fraudulent concealment of the defect or the discovery rule. Under Virginia law, however, a plaintiff must allege an affirmative misrepresentation in order to toll the statute of limitations. *Evans v. Trinity Indus., Inc.*, 137 F. Supp.3d 877, 882 (E.D. Va. 2015) (plaintiff "must establish that the defendant undertook an *affirmative act* designed or intended, directly or indirectly, to obstruct the plaintiff's right to file her action"). "Mere silence, or passive concealment," as Plaintiff alleges here, "is insufficient to toll the limitations period." *Id.*; *see also Mackey v. McDannald*, 298 Va. 645, 656, 842 S.E.2d 379, 385 (2020) ("Mere silence by the person liable is not concealment, but there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action."); *Chapman v. Gen. Motors LLC*, 531 F. Supp.3d 1257, 1282 (E.D. Mich. 2021) (applying Virginia law).[1]

In addition, "Virginia has never adopted the so-called 'discovery rule' for purposes of determining when a cause of action accrues for injury to real property, breach of contract, or breach of warranty." *CPM Virginia, L.L.C. v. Virginia Elec. & Power Co.*, 96 Va. Cir. 90 (2017) (citation

---

[1] To the extent Plaintiff relies upon GM's affirmative representations that the 2016 SRX was "safe, reliable, well-engineered and of high quality," such general statements "are examples of non-actionable puffery, i.e., 'an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying.'" *Johnson v. FCA US LLC*, 555 F. Supp.3d 488, 506 (E.D. Mich. 2021); *Raymo v. FCA US LLC*, 475 F. Supp.3d 680, 706 (E.D. Mich. 2020); *see* ECF No. 1 at ¶ 160.

omitted); *see also Chapman*, 531 F. Supp.3d at 1282 (noting that discovery rule theory is not available under Virginia law and dismissing implied warranty claim as time barred). Because Plaintiff has failed to allege sufficient facts to support equitable tolling of the statute of limitations under Virginia law, the court will dismiss his implied warranty claim as time barred.

      B.    <u>Magnuson-Moss Warranty Act</u>

The Magnuson-Most Warranty Act provides a federal cause of action to "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310. The Act incorporates state substantive law for breach of warranty; "[t]herefore, the elements that a plaintiff must establish to pursue a cause of action for breach of warranty under the MMWA are the same as those required by [state] law." *Kuns v. Ford Motor Co.*, 543 Fed. Appx. 572, 575 (6th Cir. 2013). In other words, MMWA claims "'stand or fall' with valid state law warranty claims." *Chapman*, 531 F. Supp.3d at 1285.

Because Plaintiff does not have a valid implied warranty claim under Virginia law, his MMWA claim must be dismissed. *Id.*; *see also Price v.*

*Freedom Ford, Inc*., 46 Va. Cir. 129 (1998) ("Most courts apply the UCC statute of limitations to Magnuson-Moss actions.").

      C.    <u>Unjust Enrichment</u>

Defendant seeks dismissal of Plaintiff's unjust enrichment claim because an express written warranty governs the subject matter of their dispute. "In Virginia, implied contract actions such as quantum meruit and unjust enrichment are unavailable when an express contract governs the dispute's subject matter." *Morris v. Taylor Commc'ns Secure & Customer Sols., Inc.*, 513 F. Supp.3d 694, 702 (W.D. Va. 2021). There is no dispute that Plaintiff's vehicle was covered by an express written warranty. Accordingly, Plaintiff's unjust enrichment claim is subject to dismissal. *See Johnson v. FCA US LLC,* 555 F. Supp.3d 488, 505-506 (E.D. Mich. 2021) ("[A] vehicle purchaser cannot maintain an unjust enrichment claim where there is an express warranty that governs the same subject matter as his unjust enrichment claims.").

      D.    <u>Fraud-Based Claims</u>

Plaintiff alleges fraudulent concealment under common law and the Virginia Consumer Protection Act. "Concealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." *Bank of Montreal v. Signet*

*Bank*, 193 F.3d 818, 827 (4th Cir. 1999) (Virginia law). In federal court, allegations of fraud must be pleaded with particularity pursuant to Rule 9(b), whether under common law or consumer-protection statutes. *See Matanky v. Gen. Motors LLC*, 370 F. Supp.3d 772, 797 (E.D. Mich. 2019) ("Because Plaintiffs' consumer protection claims sound in fraud, they must meet Rule 9(b)'s heightened pleading standard.") (applying laws of various states, including Virginia).

Although this pleading standard is slightly relaxed with regard to fraudulent omissions, a plaintiff must plead "the who, what, when, where, and how" of the alleged omission, that is "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [the defendant] obtained as a consequence of the alleged fraud." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 255-56 (6th Cir. 2012); *see also Gregorio v. Ford Motor Co.*, 522 F. Supp.3d 264, 277 (E.D. Mich. 2021). "In the context of an allegedly defective product, '[a] complaint may suffice if it alleges that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the

defect.'" *Johnson*, 555 F. Supp.3d at 507; *Francis v. Gen. Motors, LLC*, 504 F. Supp.3d 659, 681-82 (E.D. Mich. 2020).

Defendant argues that Plaintiff has not adequately alleged that GM knew of the defect prior to the sale of his vehicle in 2016. *See Smith v. General Motors LLC*, 988 F.3d 873, 886 (6th Cir. 2021) (to support a claim for fraudulent concealment, "a complaint must contain specific facts showing the manufacturer's knowledge of the defect that it allegedly fraudulently concealed"); *Raymo v. FCA US LLC*, 475 F. Supp.3d 680, 709 (E.D. Mich. 2020) (both fraudulent concealment and state-law consumer protection claims require the plaintiff to plead knowledge). Plaintiff asserts that GM knew of the defect based upon (1) TSBs issued beginning in 2010; (2) the Customer Service Campaign and offer to reimburse 2011-2015 model owners for repairs; (3) consumer complaints; (4) and information only within GM's custody, including "pre-production design failure mode and analysis data, production design failure mode and analysis data, . . . pre-release testing data [and] early consumer complaints to GM and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, and other aggregate data from GM dealers about the problem." ECF No. 1 at ¶¶ 37, 40-47 50-55.

-11-

Plaintiff's allegations regarding pre- and post-sale testing and data are conclusory and similar to allegations that the Sixth Circuit has determined are insufficient to withstand a motion to dismiss. The court rejected allegations that pre-sale testing demonstrated an automaker's knowledge of a defect, when the plaintiff made "no specific allegations about the results of the tests, such as data obtained by GM or documents confirming or suggesting whether the defect became known." *Smith*, 988 F.3d at 884; *see also Raymo*, 475 F. Supp.3d at 707-708; *Hall v. General Motors, LLC*, 2020 WL 1285636, at *3 (E.D. Mich. Mar. 18, 2020) (rejecting similar allegations as "too vague and pleaded at too high a level of generality to support a reasonable inference that GM had pre-sale knowledge").

The *Smith* court further noted that "although complaints grounding claims on 'information and belief' can survive a motion to dismiss, they 'must set forth a factual basis for such belief,' and plaintiffs cannot 'base claims of fraud on speculation and conclusory allegations.'" 988 F.3d at 885 (citations omitted). Here, Plaintiff has alleged no facts regarding the outcome of testing and/or data that would raise an inference that GM knew of the defect before Plaintiff purchased his vehicle. *See also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) ("The allegation

that HP, as the manufacturer, had 'access to the aggregate information and data regarding the risk of overheating' is speculative and does not suggest how any tests or information could have alerted HP to the defect.").

The court next considers the TSBs, upon which Plaintiff primarily rely to demonstrate GM's knowledge of the defect. A TSB is an "alert that informs authorized service technicians to pervasive issues affecting particular models and model years." *In re General Motors Air Conditioning Marketing and Sales Practices Litigation*, 406 F. Supp.3d 618, 636-37 (E.D. Mich. 2019). GM first issued a TSB in 2010 regarding "Low Beam Headlamp Bulb Diagnosis/Replacement." ECF No. 10-3; ECF No. 1 at ¶¶ 42-43. The May 2015 version of this bulletin applied to 2010-2013 Cadillac SRX models, among other vehicles. *Id.* The bulletin states that "some customers may comment that the low-beam headlamp is inoperative." ECF No. 10-3. Technicians are directed to "replace the bulb and inspect the connector." *Id.* If the connector is discolored, technicians are directed to replace the connector as well as the bulb. *Id.*

GM also issued a TSB in February 2016, applicable to 2017 and prior GM passenger cars and trucks. ECF No. 10-4; ECF No. 1 at ¶ 45. The bulletin was issued to "better define causes of condensation in exterior lamps and includes guidelines for determining the difference between a

-13-

lamp with a normal atmospheric condition (condensation) and a lamp with a water leak." *Id.* It contains photographs to assist technicians in diagnosing a water leak as opposed to "normal" condensation occurring under certain atmospheric conditions.

The complaint also refers to a TSB issued in April 2015, which covers all 2016 and prior GM passenger cars and trucks. ECF No. 10-5; ECF No. 1 at ¶ 46. This bulletin identifies conditions that GM considers non-warrantable, including damage to headlamps as a result of chemical cleaners or impact. It is unclear how this TSB demonstrates GM's knowledge, as it does not refer to the allege defect or symptoms.

None of the TSBs specifically reference the Headlight Defect claimed by Plaintiff, which is that faulty seals and/or vent design allows moisture to accumulate in the headlamp assembly, resulting in corroded components and burnt-out or dimming bulbs. ECF No. 1 at ¶¶ 21-23. The TSB regarding bulb replacement does not suggest a cause underlying the "inoperative" headlamps. The TSB regarding the difference between condensation and water leaks likewise does not indicate that the condition was the result of faulty seals or that it could cause the headlights to dim. Courts have held that TSBs that do not specifically reference the defect at issue are not sufficient to plausibly plead a manufacturer's knowledge. *Compare Hall*,

-14-

2020 WL 1285636, at *6 ("Unlike the TSBs here, the TSBs in those cases, on their face, were unmistakably linked to a core feature of the defect at issue.") (citing cases); *Sloan v. General Motors LLC*, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) (TSB "addresses the general problem of excessive oil consumption, and does not mention the alleged specific defect"); *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp.3d 1183, 1222 (S.D. Fla. 2021) ("TSBs that only generally address the problem at hand are rarely considered persuasive."), *with In re GM Air Conditioning Litig.*, 406 F. Supp.3d at 636-37 (TSB specifically alerted technicians to cracks in air conditioning system components causing the system to blow hot rather than cold air); *Francis*, 504 F. Supp.3d at 684 ("GM allegedly issued more than 60 TSBs over a span of five years of production acknowledging issues with hard shifting, shuddering, hesitation, surging, and unexpected acceleration or deceleration by the class vehicles."); *Gregorio*, 522 F. Supp.3d at 282 ("[W]hen Ford issues a service bulletin about the precise issue in the precise vehicle that a plaintiff complains of, it is common sense to infer that Ford had knowledge of that issue at the time of, and prior to, the service bulletin."); *Pistorio v. FCA US LLC*, 2022 WL 141524, at *11 (E.D. Mich. Jan. 14, 2022) (noting that thirteen "TSBs consistently describe the symptoms of the defect in similar terms to the accounts in the Amended

Complaint, including: 'touchscreen freezing up or becomes inoperative', 'rear view camera does not display on screen', 'backup camera screen blank', and 'radio control screen blank or locked'").

The TSBs at issue are not sufficiently linked to the alleged Headlight Defect in order to raise a plausible inference that GM knew of the defect prior to Plaintiff's purchase in 2016. And although relevant TSBs are not necessarily required to plead GM's knowledge, here they are the only specific facts alleged that pre-date Plaintiff's purchase. Plaintiff relies upon online consumer complaints (largely from 2020 and 2021), a 2018 lawsuit regarding previous models, and the 2019 settlement and Consumer Satisfaction Campaign.[2] These allegations only invite speculation regarding the timing of GM's knowledge, rather than plausibly allege that GM knew about the Headlight Defect in 2016. This is particularly true given that the defect is not alleged to manifest soon after purchase, but many years and miles later. *See* ECF No. 1 at ¶¶ 63, 66 (alleging Plaintiff purchased his 2016 SRX in 2016 with approximately 22,000 miles on the odometer and began experiencing the Headlight Defect in January 2021); *Smith*, 988 F.3d

---

[2] The Consumer Satisfaction Campaign also does not specifically reference the alleged defect, but a "condition [in 2010 vehicles] caused by the loss of electrical contact between the halogen headlamp connectors and low beam head lamp bulbs that 'could cause the headlamp and/or daytime running lamp to work intermittently.'" ECF No. 1 at ¶ 52.

at 886 ("Plaintiffs' argument implies that GM knew about the safety ramifications of that defect when it sold the cars even though the defect took time to manifest. That makes little sense.").

In sum, "[e]ven accepting that GM produced defective vehicles . . . Plaintiff[] must show that GM had sufficient knowledge of the harmful defect to render its sales fraudulent." *Smith*, 988 F.3d at 875. Plaintiff has failed to plausibly plead GM's knowledge here. Accordingly, the court will dismiss his fraudulent concealment claims, arising under common law and the Virginia Consumer Protection Act. *See Chapman*, 531 F. Supp.3d at 1300 (dismissing consumer protection claims when GM did not have knowledge of the defect prior to the time of sale).

To the extent Plaintiff alleges that GM made affirmative misrepresentations in violation of the VCPA, his allegations are likewise insufficient to state a claim. GM's alleged representations that the 2016 SRX was "safe, reliable, well-engineered and of high quality" are "examples of non-actionable puffery, i.e., 'an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying.'" *Johnson,* 555 F. Supp.3d at 506 (citations omitted); *Raymo*, 475 F. Supp.3d at 706; *see* ECF No. 1 at ¶ 160. As the *Johnson* court aptly stated: "Courts in this district have repeatedly held that the kind of broad, non-

quantifiable statements about a vehicle's safety or reliability that Plaintiffs identify here are non-actionable puffery, and this Court agrees with those rulings." *Johnson*, 555 F. Supp.3d at 506. Accordingly, the court dismisses all of Plaintiff's fraud-based claims, whether premised upon common or state statutory law.

CONCLUSION

Because the court finds that Plaintiff has failed to state a claim, it need not consider Defendant's arguments that Plaintiff lacks standing to assert claims on behalf of a class or that the VCPA precludes class relief.

IT IS HEREBY ORDERED that Defendant's motion to dismiss (ECF No. 10) is GRANTED and Plaintiff's complaint is DISMISSED.

Dated:  June 2, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 2, 2022, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk

---